**NOT FOR PUBLICATION**

```
       FILED
JAMES J. WALDRON, CLERK
       JUL 22 2015
  U.S. BANKRUPTCY COURT
      CAMDEN, N.J.
BY_____DEPUTY
```

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In Re:           | Case No.: | 14-32685-ABA          |
|------------------|-----------|-----------------------|
|                  | Chapter:  | 13                    |
| Robert L. Oakey  | Judge:    | Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

The United States of America, on behalf of its agency, the Social Security Administration (the "SSA"), filed a Motion to lift the automatic stay to permit the SSA to offset certain prepetition federal tax overpayments owed by the United States of America to Robert L. Oakey (the "Debtor") in the amount of $10,064 against the prepetition debts owed by the Debtor to the SSA, Doc. No. 34 on the court's docket (the "Motion"). The Debtor opposes the Motion and filed a cross-motion for attorney's fees, presumably pursuant to 11 U.S.C. § 362(k), because SSA garnished wages and a state tax refund postpetition, offset the federal tax overpayments without first obtaining relief from the automatic stay, and brought the Motion after significant delay (the "Cross-Motion"). Doc. No. 35 on the court's docket. The Debtor also contends that even if setoff is allowable it is not mandatory, and the Court has discretion to decide whether the stay should be lifted in each case.[1] The parties argued their positions before the court on May 26, 2015, at which time the court requested further submissions. The parties made their submissions and the court has considered same. The electronic record from the hearing on the Motion and Cross-Motion is incorporated herein.

---

[1] The Debtor also argued that the Motion was defective because the Debtor was not personally served with it. In light of the Debtor's timely response to the Motion, willingness to have the Motion heard on its return date, and actual opportunity to be heard, the court indicated that this objection would be overruled.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated September 18, 2012, referring all bankruptcy cases to the bankruptcy court. Further, this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (G) and (O) and venue is proper in this court pursuant to 28 U.S.C. § 1408. Accordingly, the court issues the following findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

## FINDINGS OF FACTS

Prior to the filing of his bankruptcy petition, the Debtor was indebted to the SSA for overpaid prepetition benefits totaling $76,046.70 (the "Debt"). The Debtor did not file a request for reconsideration of the Debt nor did he appeal the Debt. *See* Doc. No. 36 at 2 on the court's docket. Indeed, the Debtor admits that the Debt is a prepetition debt that he owes to the SSA and he has listed the Debt on Schedule F to his Petition as not being disputed, contingent or unliquidated. *See* Doc. 1 at 27 on the court's docket. Prior to the filing of the Petition, the SSA was collecting the Debt through wage garnishment.

The Debtor filed his Petition for Relief under Chapter 13 of the Bankruptcy Code (the "Petition") on November 7, 2014 (the "Petition Date"). The SSA itself, and its counsel, received direct notice of the Debtor's bankruptcy filing from the bankruptcy court on November 12, 2014. *See* Doc. No. 9 on the court's docket. The SSA was also advised through a letter from Debtor's counsel that the Petition was filed and the automatic stay was in place. *See* Doc. No. 35-1 on the court's docket. Despite this direct notice, the SSA did not input the Petition into its system until February 15, 2015 and, even then, the SSA's representative incorrectly noted the account. *See* Doc. No. 37-1 ¶ 8 on the court's docket. Finally, on March 17, 2015, the SSA correctly noted the Petition in its system. *Id.* ¶ 10.

As of the Petition Date, the Debtor was delinquent in filing federal and state tax returns for the years 2010, 2011, 2012 and 2013. The Debtor subsequently filed all the delinquent returns in or about December 2014. The Debtor also filed his 2014 return early in 2015. As a result of the filing of the delinquent tax returns, it was determined that the Debtor made tax overpayments in the amounts of $3,738, $4,221, and $2,105, totaling $10,064 (collectively, the "Overpayments"). That is why, on January 5, 2015, the Department of the Treasury Bureau of the Fiscal Service applied the Overpayments to the Debt thereby reducing the amount of the Debt. *See* Doc. No. 34-1 at 2 and Exhibit B thereto (Doc. No. 34-3) on the court's docket.

It is also undisputed that as a result of the Debt, the Debtor's wages and a state tax refund were garnished/attached postpetition. Through the Certification of Bryant Wilder, Doc. No. 37-1 on the court's docket, the SSA certified that the continued wage garnishment was a result of its clerical error and all postpetition wage garnishments have been returned to the Debtor. There was also a postpetition state tax refund in the amount of $337 refunded to the Debtor. While the Debtor claims that no postpetition garnishments or attachments have been returned to him, *see*,

Doc. No. 35 ¶ 7 on the court's docket, he has submitted no evidence to refute the statements made by the SSA in its supporting Certification. In contrast, the SSA has provided evidence that prior to the filing of the Motion, it returned via direct deposit into the Debtor's Wells Fargo bank account the $337 state tax refund (via two payments: $142.20 and $194.80) and the $1,048.23 in wages. *See* Doc. Nos. 44 and 44-1 on the court's docket. This exhibit has not been disputed by the Debtor.

On April 30, 2015, the SSA filed its Motion. The SSA claims that once it learned of its ability to effectuate a setoff, it attempted to obtain the Debtor's consent to the Motion, and, after receiving no response, it filed the Motion and its proof of claim. *See* Doc. No. 37 at 3 on the court's docket. The SSA also contends that at no point had it intended permanently to settle accounts and instead demonstrated its intention to obtain the court's approval of the setoff. *Id.* at 4. Also, on April 30, 2015, the SSA filed its proof of claim, Claim No. 6-1 on the Court's Claims Register (the "Proof of Claim"). The Proof of Claim reflects an unsecured claim owed to the SSA in the amount of $65,869.41. The Proof of Claim does not reflect any designation of the SSA's entitlement to effectuate a set off in Part 4 thereof or any other part.

The court notes other relevant facts that it has considered in connection with its decision. The Debtor's Plan was confirmed on an interim basis on January 15, 2015. The plan payments under the confirmed plan did not rely upon receipt of the Overpayments. The Debtor did not list the Overpayments on Schedule B to his bankruptcy petition or claim an exemption of the Overpayments. Indeed, a review of the Debtor's Petition and Schedules reveals that the Debtor has exhausted his exemptions available under 11 U.S.C. § 522(d)(5) and therefore appears unable to exempt the Overpayments. *See* Doc. No. 1 at 23 on the court's docket. Also, the confirmed plan does not specifically provide for any direct payments to the SSA or for that matter, adequate protection to the SSA. Instead, the SSA is simply listed as a general unsecured creditor on Schedule F to the Debtor's Petition and general unsecured creditors are to receive a *de minimis pro rata* distribution under the confirmed plan.

## CONCLUSIONS OF LAW

### A. The SSA Has Established The Right Of Set Off

Section 553(a) provides:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case[.]

11 U.S.C. § 553(a). Section 553 does not create a setoff right but rather preserves that right if it existed outside a bankruptcy case. *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995). With that in mind:

in order to maintain a right of setoff under section 553, the party asserting the right must show:

1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.

2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case.

3. The debt and the claim are mutual obligations.

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 262-63 (3d Cir. 2000). See *Strumpf*, 516 U.S. at 18 (stating requiring mutuality "thereby avoid[s] the absurdity of making A pay B when B owes A") (internal marks omitted). *In re Stienes*, 285 B.R. 360, 362 (Bankr. D.N.J. 2002).

The Debtor argues that the SSA cannot establish the necessary elements for setoff to apply. He argues that the Overpayments were paid and payable postpetition and were actually paid postpetition. However, a tax refund accrues at the end of the corresponding taxable year, not when it is paid or when the tax return is filed or due. *In re Midkiff*, 271 B.R. 383, 386 (B.A.P. 10th Cir. 2002) ("The date on which all events necessary to establish the tax liability have occurred is the date in which the taxpayer's refund claim arises."); *In re Glenn*, 207 B.R. 418, 421 (E.D. Pa. 1997); *In re Stienes*, 285 B.R. at 362. Thus, the Overpayments, which arose from the years 2010 through 2013, are a debt owed to the Debtor which arose prior to the commencement of the bankruptcy case.

Notwithstanding the foregoing, the Debtor argues the right to setoff is the right of the creditor to offset a mutual debt owed by such creditor to the debtor. Here we have a debt owing to the Debtor from the Internal Revenue Service for overpayment of income taxes and a debt owing from the Debtor to the SSA for overpayment of benefits. Accordingly, the Debtor argues, there cannot be mutual obligations because the SSA is not the Internal Revenue Service. However, the Debtor is mistaken. All agencies of the United States are considered one creditor for purposes of setoff. *In re Turner*, 84 F.3d 1294, 1298 (10th Cir. 1996). See *In re SemCrude, L.P.*, 399 B.R. 388, 399 (Bankr. D. Del. 2009), *aff'd*, 428 B.R. 590 (D. Del. 2010). See also *In re Shortt*, 277 B.R. 683 (Bankr. N.D. Tex. 2002) where the court noted:

> [T]he general rule is that all agencies of the federal government are treated as a single entity for purposes of setoff. See, e.g., *United States v. Maxwell*, 157 F.3d 1099, 1102 (7th Cir. 1998); *HAL, Inc. v. United States (In re HAL, Inc.)*, 122 F.3d 851, 853 (9th Cir. 1997); *Turner v. SBA (In re Turner)*, 84 F.3d 1294, 1299 (10th Cir. 1996). Thus, the government may setoff funds owed by one agency to collect debts owed to other agencies of the government. See, e.g., *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 539, 66 S. Ct. 729, 90 L. Ed. 835, 105 Ct. Cl. 824 (1946); *In re Young*, 144 B.R. 45, 46 (Bankr. N.D. Tex. 1992); *In re Sound Emporium*,

*Inc.*, 70 B.R. 22, 24 (W.D. Tex. 1987) (allowing a setoff between the Army's debt to the debtor and the IRS's claim against the debtor). When faced with the issue, courts of appeal "have applied the same single-entity rule in bankruptcy cases," *United States v. Maxwell*, 157 F.3d at 1102, and have held that "for purposes of setoff under § 553, the agencies of the United States constitute a single 'governmental unit . . .,'" "*HAL, Inc.*, 122 F.3d at 853.

*Shortt*, 277 B.R. at 690. In light of the foregoing, a debt, i.e., the Overpayments, exists from one creditor, i.e., the SSA (as an agency of the United States), to the Debtor and that debt arose prior to the commencement of the bankruptcy case. Accordingly, the first element necessary for a setoff exists.

It is undisputed that the SSA has a claim against the Debtor, by way of the Debt, which arose prior to the commencement of the bankruptcy case. A determination of the Debt was made, the Debtor did not seek a reconsideration or appeal of the Debt, and he admitted that he owed the Debt on his Petition. Hence, the second element necessary for a setoff exists.

The court also concludes that the third element necessary for a setoff exists. The Debt and the Overpayments are mutual obligations as they are debts between the same parties, a federal agency and the Debtor, standing in the same capacities. *In re Blanton*, 105 B.R. 321, 334 (Bankr. E.D. Va. 1989). Moreover, the SSA, as a federal agency, is specifically entitled under nonbankruptcy law to set off the disability overpayments against tax overpayments pursuant to 42 U.S.C.A. § 404 and 26 U.S.C. § 6402(a), (d) and (h). The statutes authorize "the Secretary of Treasury to credit an individual's tax overpayment against governmental debts before determining whether a taxpayer is entitled to a refund." *U.S. Dep't of Agric. Rural Housing Serv. v. Riley*, 485 B.R. 361, 365 (W.D. Ky. 2012). *See also In re Huff*, 343 B.R. 136, 142 (W.D. Pa. 2006) ("the Secretary of the Treasury may setoff a tax refund against the taxpayer's debt to *another* Federal agency").

In sum, the relevant statutes and case law mentioned above as applied to the facts of this case convince the court that a creditor-debtor relationship exists between the SSA and the Debtor, that a debt that arose prior to the commencement of the bankruptcy case exists from a creditor to a debtor, that a creditor has a claim which arose prior to the commencement of the bankruptcy case against a debtor and that the debt and the claim are mutual obligations. To that end, the SSA has a valid right of setoff with regard to the Overpayments.

### B. SSA Has Improperly Effectuated A Setoff

Having concluded that the SSA has a valid right of setoff against the Overpayments, the question becomes whether the SSA improperly effectuated a setoff of the Overpayments against the Debt. The court finds that it did. In making its determination, the court looks to *Strumpf*, 516 U.S. 16.

In *Strumpf*, the debtor filed for protection under Chapter 7 of the United States Bankruptcy Code in January of 1991. At that time, the debtor had a checking account with

Citizens Bank of Maryland. The debtor was also in default on a remaining balance of a loan from the Bank. Ten months after the bankruptcy filing, the bank placed an administrative hold on a portion of the debtor's account that it claimed it was subject to a setoff. By placing the administrative hold on the account, the bank refused to pay withdrawals from the account that would reduce the balance below the sum that was due on the debtor's loan. Immediately after the bank placed the administrative hold on the account, it filed for relief from the automatic stay to allow it to effectuate a setoff of the account. In response, the debtor filed a motion to hold the bank in contempt, claiming that the administrative hold violated the automatic stay under 11 U.S.C. §362(a). *Strumpf*, 516 U.S. at 16-17.

In coming to its conclusion, the Supreme Court recognized that the bank, like the SSA here, had the ability to offset the debtor's debt against the debt owed by the bank to the debtor, i.e., the balance in the checking account, under relevant non-bankruptcy law. Thus, the only question remaining was "whether [the bank's] refusal to pay its debt to the [the debtor] upon the latter's demand constituted an exercise of [the] set-off right and hence violated the stay." *Id.* at 19. The Supreme Court concluded that it did not and held that the mere placing of an administrative freeze on a debtor's checking account pending the resolution of the bank's right to offset did not violate the automatic stay.

In concluding that the bank's action was not a setoff in violation of the automatic stay, it held:

> [The bank] refused to pay its debt, **not permanently and absolutely**, but only while it sought relief under § 362(b) from the automatic stay . . . . All that concerns us here is whether the refusal *was a setoff*. We think it was not, because -- as evidenced by [the Bank's] "Motion for Relief from Automatic Stay and for Setoff" -- **[the Bank] did not purport permanently to reduce [the debtor's] account balance by the amount of the defaulted loan.**

*Id.* (bold added). The Court opined that the administrative hold was not an act to obtain possession of or from the bankruptcy estate or an attempt to exercise control over property of the estate contemplated by § 362(a)(3) and (6) of the Bankruptcy Code. Instead, the Court concluded that the Bank's temporary refusal to pay was "merely a refusal to perform its promise" to pay from the Bank to the debtor. *Id.* at 21. Such a temporary refusal to pay did not rise to the level of a violation of the automatic stay. The Supreme Court also dismissed any contention that the Bank's actions constituted a violation of the automatic stay under section 362(a)(7) of the Bankruptcy Code. The Court concluded that to hold otherwise would be inconsistent with section 542(b) and section 553(a) of the Bankruptcy Code. *Id.* at 20. Accordingly, the placing of the administrative hold on the debtor's account was appropriate.

In the present case, the SSA filed its Motion some three months after the Overpayments were applied to the Debt. There is undisputed evidence that before filing the Motion, the SSA took steps to secure a consensual order regarding relief from the stay. When that did not happen, the SSA filed its Motion. In light of these facts and the holding in *Strumpf*,[2] this court does not

---

[2] *See also In re De Laurentiis Entm't Grp., Inc.*, 963 F.2d 1269 (9th Cir. 1992) (discussing the timeliness of motion for relief (6 months)).

believe that the SSA's Motion in this case is untimely, and, accordingly, the Debtor's objection as to this issue is overruled.

However, what is troubling to the court is that it appears that the SSA did more than simply place an administrative freeze on the Overpayments. It appears that the SSA actually effectuated the setoff against the Overpayments before obtaining stay relief. The SSA states "that at no point had it intended permanently to settle accounts, and instead demonstrated its intention to obtain the Court's approval of the setoff." Doc. No. 37 at 4. However, the evidence presented requires a different finding.

First, the SSA states "[b]ased on these tax refund offsets totaling $10,064.00, the SSA *reduced* Debtor's overpayment debt from $75,933.41 to $65,869.41." Doc. No. 34-1 at 2. Moreover, the Department of the Treasury Bureau of the Fiscal Service stated that it "*applied* all or part of your federal payment to a debt you owe." *Id.*, Exh. B (Doc. No. 34-3), at 2, 4, 6. This application of the Overpayments took place three months prior to the Motion being filed. A plain understanding of these statements leads the court to conclude that the SSA did not simply place an administrative hold on the Overpayments as allowed by *Strumpf*, but rather, the SSA actually effectuated a setoff when it reduced the Debt by applying the Overpayments to the Debt.

Second, the Proof of Claim itself reflects that the SSA already reduced the Debt to $65,869.41. This supports the court's understanding that the SSA actually effectuated a setoff of the Overpayments. What is also curious to the court is that the Proof of Claim is silent to any right of setoff even though Part 4 thereof requires such a right to be identified. In addition, none of the documents in support of the Proof of Claim indicate that the Overpayments are being administratively held, but, to the contrary, plainly lead to the conclusion that the SSA has already effectuated a setoff of the Overpayments without first seeking the necessary approval to do same.[3] All in all, the court concludes that, contrary to the mandate of the *Strumpf* case, the SSA purported to permanently to reduce the Debt by applying the Overpayments to it before obtaining relief from the stay, which of course, violates the automatic stay.

### C. 11 U.S.C. § 362(b)(26) Is Not a Defense

Nevertheless, the SSA asks the court to look to 11 U.S.C. § 362(b)(26) and find that there was no stay in place for the SSA to violate. Section 362(b)(26) provides that the automatic stay will not act as a stay:

> under subsection (a), of the setoff under applicable nonbankruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief against **an income tax liability for a taxable period that also ended before the date of the order for relief**, except that in any case in which the setoff of an income tax refund is not permitted under

---

[3] It should be noted that in each of the cases cited by the SSA in support of its arguments, *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16 (1995), *In re De Laurentiis Entm't Grp., Inc.*, 963 F.2d 1269 (9th Cir. 1992) and *In re Continental Airlines*, 134 F.3d 536 (3d Cir. 1998), the creditor sought permission to effectuate a set off before actually effectuating the setoff. Also, the court reads *United States v. Norton*, 717 F.2d 767 (3d Cir. 1983) (a case on which the SSA relied) as a case in which the court agreed that the IRS wrongfully retained funds in violation of the automatic stay.

> applicable nonbankruptcy law because of a pending action to determine the amount or legality of a tax liability, the governmental unit may hold the refund pending the resolution of the action, unless the court, on the motion of the trustee and after notice and a hearing, grants the taxing authority adequate protection (within the meaning of section 361) for the secured claim of such authority in the setoff under section 506(a).

11 U.S.C. § 362(b)(26) (emphasis added). While the SSA makes an intriguing argument, the court must adhere "to the basic canons of statutory interpretation by following the plain language of [§362(b)(26)]." *In re Mortimore*, Civil Action No. 11-955 (RMB), 2011 WL 6717680, at *2 (D.N.J. Dec. 21, 2011). As the District Court in *Mortimore* further noted, "[t]he starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter . . . . Courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Id.* (internal citations and marks omitted). The words of section 362(b)(26) are clear and unambiguous. The statute specifically contemplates setoffs against an income tax liability. Indeed, even the cases the SSA relied on, *In re Maines*, No. 10-21912/JHW, 2010 WL 3984641 (Bankr. D.N.J. 2010) and *Ewing v. United States (In re Ewing)*, 400 B.R. 913, 916 (Bankr. N.D. Ga. 2008), involve matters where the government offset an income tax refund against a prepetition income tax liability.[4] As a result of a plain reading of the statute and lack of support for a different conclusion, the court finds that section 362(b)(26) can only apply to an income tax liability as contemplated under 26 U.S.C. § 6402(a) and not to other debts owed to other agencies under 26 U.S.C. § 6402(c) and (d). *See also In re Sexton*, 508 B.R. 646, 658 n.15 (Bankr. W.D. Va. 2014). A debt related to social security benefit overpayments is not an income tax liability. Consequently, section 362(b)(26) does not apply here and does not serve as a defense to the SSA's improperly effectuating its set off without first obtaining relief from the stay.

### D. Appropriate Remedy

The court now must consider the appropriate remedy. In his Cross-Motion, the Debtor requests that the SSA turn over the Overpayments, state refund and wage garnishments and also pay his attorney's fees presumably pursuant to 11 U.S.C. § 362(k). An individual harmed by a willful violation of the automatic stay can recover actual damages, including costs and attorneys' fees, as well as punitive damages in appropriate circumstances. *See* 11 U.S.C. § 362(k)(1). The court in *In re Rodriguez*, No. 07–24687 (MBK), 2012 WL 589553 (Bankr. D.N.J. Feb. 22, 2012) explained that the test under section 362(k)(1):

> is 'remarkably simple' and requires the imposition of sanctions on a party violating the automatic stay upon three provisions: First, the offending party must have violated the automatic stay. Second, the violation of the stay must have been willful. Finally, the willful violation must have caused Debtors some injury." 447

---

[4] The other case cited by SSA, *In re Bergalowski*, No. G12-20687, 2012 WL 4457742 (Bankr. N.D. Ga. 2012), does not compel this court to conclude that social security payments constitute an income tax liability for purposes of this statue.

B.R. 426, 433 (Bankr. E.D. Pa. 2011) (citing *Wingard v. Altoona Regional Health Systems (In re Wingard)*, 382 B.R. 892, 900 n.6 (Bankr. W.D. Pa. 2008)).

*Rodriguez*, 2012 WL 589553, at *3 (citing, *In re Miller*, 447 B.R. 426, 433 (Bankr. E.D. Pa. 2011)).

Like the court in *Rodriguez*, the court finds that the Debtor has satisfied the requirements to establish a willful stay violation under section 362(k)(1) as to the application of the Overpayments to the Debt. First, by actually effectuating a set off of the Overpayments against the Debt, the SSA directly violated section 362(a)(7). *See In re Newberry*, No. 12-4060, 2013 WL 618746 *5 (Bankr. S.D. Ill. Feb. 19, 2013) (finding that the setoff of a debtor's tax refund after the debtor filed her bankruptcy petition and before filing a motion for relief from stay clearly violated the automatic stay). In addition, the act of recovering a prepetition claim, i.e., having the wages and state tax refund garnished postpetition, violated section 362(a)(6). Thus, the first element of the test set forth in *Rodriguez* is satisfied.

As to the second element of that test, "willfulness can be satisfied by showing simply that the offending party knew about a debtor's bankruptcy but proceeded with the stay violation nonetheless." *Rodriguez*, 2012 WL 589553 at *4 (citation and internal marks omitted). In addition, "[w]illfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." *In re Lansdale Family Rest., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992) (the act of applying payments to reduce prepetition debt is intentional). It is undisputed that the SSA received notice of the Debtor's bankruptcy proceeding. Despite this, the SSA, through its own admission and before it obtained relief from the stay, effectuated a setoff and reduced the Debt by applying the Overpayments. Likewise, the SSA knew of the bankruptcy filing yet did not take timely steps to ensure that postpetition wages and state tax refunds would not be automatically offset. Thus, the court concludes that the second element is satisfied.

Finally, there must be some injury. As noted in *Rodriguez*, "actual damages in the form of attorneys' fees [can be] appropriate, despite the fact that there may not have been other compensable harm to a debtor." *Rodriguez*, 2012 WL 589553, at *4. However, "[f]or Debtors to recover attorneys' fees . . . such fees must be reasonable and necessary." *In re Miller*, 447 B.R. 425, 434 (Bankr. E.D. Pa. 2011). *See also Rodriguez*, 2012 WL 589553 at *5 (stating that fees had to be fair and reasonable and that since the creditor's vigorous prosecution "forced" the debtor to litigate the matter, an award of fees was warranted). At the same time "[o]nly egregious or vindictive misconduct warrants punitive damages for willful violations of the automatic stay . . . ." *Davis v. IRS*, 136 B.R. 414, 424 (E.D. Va. 1992).

In making its determination of whether fees are fair and reasonable, the court is further persuaded by the rationale of the *Miller* court which noted:

> "The policy of section 362[k], to discourage willful violations of the automatic stay, is tempered by a reasonableness standard born of courts' reluctance to foster a 'cottage industry' built around satellite fee litigation." [*In re Robinson*, 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998)] (citing *Putnam v. Rymes Heating Oils, Inc. (In re*

*Putnam)*, 167 B.R. 737, 741 (Bankr. D.N.H. 1994)). It is well established that "[r]easonable and necessary fees do not include unnecessary litigation costs." *Id.*; [s]ee also *Yarinsky v. Saratoga Springs Plastic Surgery, PC (In re Saratoga Springs Plastic Surgery,* PC), No. 1:03CV896, 2005 WL 357207, at *54 (N.D.N.Y. Feb. 11, 2005), aff'd, 172 Fed. Appx. 339 (2d Cir.2006) ("[A]n 'excessively litigious approach' to violations of the automatic stay that do not cause damages in an[d] of themselves must be guarded against.").

*Miller*, 447 B.R. at 435 (citing *In re Prusan*, No. 09–49716–CEC, 2010 WL 813778, at *3-*4 (Bankr. E.D.N.Y. March 2, 2010) (footnotes omitted). *See also In re Genesys, Inc.*, 273 B.R. 290, 296 (Bankr. D.D.C. 2001)(finding that a debtor has a duty to mitigate damages and fees should not be "completely overblown").

There is no question that the SSA's actions in this case were willful, however, the SSA's actions are not sufficient to warrant the imposition of punitive damages, including a return of the Overpayments. Before the Motion was filed, the SSA returned the garnished wages and state tax refund. The Debtor was not required to affirmatively file pleadings to recover these funds and did not do so. Only in response to the Motion did the Debtor seek a remedy through his Cross-Motion. Because the funds were already returned by the time the Motion was filed and the Cross-Motion needed to be prepared and filed, the court is at a loss as to why punitive damages are appropriate as they relate to the wage garnishments and state tax return.

Likewise, as to the application of the Overpayments to the Debt, punitive damages are unwarranted. There was no egregious conduct by the SSA. There was no significant impact on the Debtor or the case as a result of the SSA's actions. The Debtor's Plan payments did not rely upon receipt of the Overpayments. The Debtor did not account for or even exempt the Overpayments. The confirmed plan is silent as to the treatment of the claim of the SSA except to the extent that the SSA is to receive a *de minimis pro rata* distribution with all other unsecured creditors. Undisputedly, the SSA has a valid right of setoff. The SSA took steps to resolve the setoff issue without success before the Motion was filed. And while the SSA's reliance on section 362(b)(26) was misplaced, that will not be held against it. *See United States v. Norton*, 717 F.2d 767, 774-75 (3d Cir. 1983) ("any ambiguity in the law should be resolved in favor of the party charged with contempt"). Finally, the Debtor took no steps to recover the Overpayments until some four months after the setoff occurred and only in response to the Motion. Nothing in the record of this case exhibits egregious conduct by the SSA that warrants the imposition of punitive damages and consequently the Debtor's request for a return of the Overpayments is denied.

Nevertheless, the SSA intentionally intercepted the Overpayments and applied them to the Debt without first obtaining relief from the automatic stay. Likewise, it intentionally intercepted the state tax refund and wage garnishments, as set forth above. Because there was a willful violation of the automatic stay in this regard, the SSA must reimburse the Debtor for actual damages, i.e., attorney's fees, and costs. However, those attorney's fees and costs must be fair and reasonable in light of the circumstances of this matter. The court is mindful that the SSA has a valid right of setoff and that this is not a case where the Debtor was "forced" to litigate to remedy the stay violation. Rather, the Debtor waited four months to raise his concerns in

response to the Motion and by that time, contrary to the Debtor's testimony, the state tax refund and wage garnishments were returned. Unnecessary litigation costs will not be allowed and the court will not allow damages that are completely overblown. The Debtor may submit an itemized breakdown of costs and fees for the court to consider.

## CONCLUSION

In conclusion, the Court GRANTS the Motion as well as the Cross-Motion.

The SSA has a valid right of setoff under applicable non-bankruptcy law and may effectuate a setoff of the Overpayments against the Debt. The Debtor has not provided for adequate protection of the valid setoff claim of the SSA and the court is not convinced that that he could. The court, in its discretion, will permit the setoff because there is no other way to protect the valid and enforceable setoff right of the SSA. The relief requested in the Motion is warranted.

As to the Cross-Motion, the Debtor may submit evidence of fair and reasonable costs and fees incurred due to the SSA's actions within 14 days of the date of this Memorandum Decision and the SSA may file a response within 7 days of the Debtor's filing of that evidence. If a response is filed, the court will advise the parties if a hearing is required.

The Court declines to impose any punitive damages or other sanctions on the SSA.

The court will contemporaneously issue a separate order consistent with this opinion.

BY: _____
Honorable Andrew B. Altenburg, Jr.

Dated: July 22, 2015